ADRIENNE C. PUBLICOVER (SBN 161432)
Adrienne.Publicover@WilsonElser.com
FRANCIS TORRENCE (SBN154653)
Francis.Torrence@WilsonElser.com
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
525 Market Street
17th Floor
San Francisco, CA 94105-2725
Telephone  (415) 433-0990
Facsimile  (415) 434-1370

**Attorneys for Defendant**
**Hartford Life and Accident Insurance Company**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA DICKERSON<br><br>                    Plaintiff,<br><br>     vs.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY; AND DOES 1 through 10, inclusive<br><br>                    Defendant. | Case No.<br><br>**DEFENDANT HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446**<br><br>State Court Action Filed: June 9, 2015<br>Removal Filed:  July 14, 2015 |

## NOTICE OF REMOVAL

Defendant HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, (hereafter "HARTFORD" or "Defendant") hereby removes this action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and in support thereof, respectfully submits that the below facts are true and correct as of the date of this filing:

## JURISDICTION AND VENUE

1.     This is a civil action over which this Court has jurisdiction under 28 U.S.C. § 1332 (diversity), and is one which may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive

1  of interest and costs, as set forth more fully below.

2      2.    Venue is proper in this Court because the underlying state court action

3  was filed in the Superior Court of California, County of Ventura.

4  **JURISDICTIONAL AMOUNT**

5      3.    The amount in controversy in this action exceeds $75,000.  Plaintiff

6  seeks past and future disability insurance benefits from July 2013, forward, as well as

7  damages arising from her claim of "bad faith," including attorneys' fees, emotional

8  distress, and punitive damages.  Complaint at: ¶¶ 5, 6, 12, 13, 56, 58, 59, 60, 61, 62,

9  63, 67, and Prayer, pp. 13-14.  A copy of the Complaint is attached and included in

10  Exhibit A.  The allegations in Plaintiff's Complaint are incorporated by reference into

11  HARTFORD's Notice of Removal.

12      4.    The amount in controversy is established on the face of the Complaint

13  through the allegations of the Complaint as referenced above, and in the terms and

14  conditions of the Policies referenced in the Complaint.

15      5.    Additionally, the possible full amount of disability benefits which

16  plaintiff claims through her Complaint is also calculated in the accompanying

17  Declaration of Annette Moore, filed in support of this Removal, attached as Exhibit C.

18      6.    The Complaint references the Long Term Disability Policy (LTD), No.

19  GLT 033112.  Complaint at ¶ 11.  Ms. Dickerson made a claim for LTD benefits,

20  which was ultimately denied.  (Declaration of Moore, at ¶¶ 3, 4.)

21      7.    Subject to all terms and conditions of the LTD policy, the LTD policy

22  pays monthly disability benefits.  At the time the decision to terminate her LTD

23  benefits was made, Ms. Dickerson was being paid a monthly benefit of approximately

24  $1236.00 (which may not have accounted for all available offsets).  In the event that

25  Ms. Dickerson is able to establish ongoing and continued proof of disability, the LTD

26  policy in question would provide for monthly benefits, subject to all terms, conditions

27  and limitations, through February 1, 2035, or for a period of 259 months (July 2013 to

28  February 2035).   The total amount of LTD benefits under the policy for that entire

DEFENDANT HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S NOTICE OF
REMOVAL

1  period of time, using the approximate benefit payment amount of $1236.00 (and

2  without deducting all possible offsets to the benefit payments) would be

3  approximately $320, 124.00 (Declaration of Moore, at ¶¶ 3, 4, 5.)

4      8.      Therefore, without even considering plaintiff's claims for attorneys' fees

5  or emotional distress, the amount in controversy far exceeds the statutory requirement.

6                        **DIVERSITY OF CITIZENSHIP**

7  I.      PARTIES

8      9.      Plaintiff Sylvia Dickerson ("Plaintiff") is a resident and citizen of State

9  of California.  Complaint at: ¶ 7.

10     10.     Defendant, HARTFORD is a corporation has its headquarters in

11  Simsbury, Connecticut and is incorporated under the laws of Connecticut.   (See,

12  Declaration of Moore, ¶ 2.)  HARTFORD is considered a citizen of Connecticut under

13  the principles of diversity jurisdiction.  See 28 U.S.C. § 1332 (c)(1).

14     11.     HARTFORD is informed and believes that no other defendant has been

15  served in this action to date.

16           PROCEDURAL REQUIREMENTS FOR REMOVAL SATISFIED

17     12.     This Notice of Removal is being filed within the time allotted by

18  U.S.C. § 1446(b) as Defendant is filing its Notice of Removal within thirty days of its

19  first receipt of the initial pleading in this case by any defendant, which was June 15,

20  2015.

21     13.     Pursuant to 28 U.S.C. § 1446, all documents filed or served in the case,

22  including all process, pleadings, and orders served upon any defendant are attached as

23  Exhibit A.

24     14.     Pursuant to 28 U.S.C. § 1441(d) all adverse parties are being provided

25  with notice of the filing of this Notice of Removal by service of a copy of this Notice

26  of Removal to Plaintiff's counsel as set forth in the attached Proof of Service.  A

27  Notice to State Court and Adverse Party Re: Removal of the Action to Federal Court

28

DEFENDANT HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S NOTICE OF
REMOVAL

1  is being filed with the Clerk in the State Superior Court County of Ventura as required

2  by 28 U.S.C. § 1446(d).  Said Notice is being served upon Plaintiff (Exhibit B).

3      15.    Venue is proper in the Central District of California, Western Division,

4  pursuant to §1441 (a) which reads in part, "… any civil action … may be removed …

5  to the district court of the United States for the district and division embracing the

6  place where such action is pending."  This matter is presently venued in the Superior

7  Court, County of Ventura, which is within the jurisdiction of the Central District of

8  California.

9                                PRAYER

10     WHEREFORE, HARTFORD prays that this Notice of Removal be deemed

11  good and sufficient and that the action captioned Sylvia Dickerson v. Hartford Life

12  and Accident Insurance Company, and Does 1-10, inclusive, Civil Suit No. 56-2015-

13  00468350-CU-IC-VTA, in the Superior Court of the State of California for the County

14  of Ventura, State of California, be removed from that court to the United States

15  District Court for the Central District of California, and that this Court have and

16  assume full and complete jurisdiction thereof and issue all necessary orders and grant

17  all general and equitable relief to which petitioners might be entitled, and that all

18  further proceedings in the state court be suspended.

19  Dated: July 14, 2015              WILSON, ELSER, MOSKOWITZ,
                                      EDELMAN & DICKER LLP
20

21                        By:     /s/ Francis Torrence
                                  ADRIENNE C. PUBLICOVER
22                                FRANCIS TORRENCE
                                  Attorneys for Defendant
23                                HARTFORD LIFE AND ACCIDENT
                                  INSURANCE COMPANY
24

25

26

27

28

DEFENDANT HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S NOTICE OF
REMOVAL

**EXHIBIT A**

   

1  FRANK N. DARRAS #128904, Frank@DarrasLaw.com
   LISSA A. MARTINEZ #206994, LMartinez@DarrasLaw.com
2  SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
3  PHILLIP S. BATHER #273236, PBather@DarrasLaw.com

4  **D** DarrasLaw

5  3257 East Guasti Road, Suite 300
   Ontario, California 91761-1227
6  Telephone:   (909) 390-3770
   Facsimile:    (909) 974-2121
7
   Attorneys for Plaintiff
8  SYLVIA DICKERSON

VENTURA
SUPERIOR COURT
**FILED**

JUN 0 9 2015

MICHAEL D. PLANET
Executive Officer and Clerk
BY:_____,Deputy
J. D. BELTRA

9

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                  FOR THE COUNTY OF VENTURA

12  SYLVIA DICKERSON,                Case No  56-2015-00468350-CU-IC-VTA

13          Plaintiff,               **COMPLAINT AND JURY DEMAND**

14      vs.                          1) Breach of Duty of Good Faith and
                                     Fair Dealing; and,
15                                   2) Breach of Contract
    HARTFORD LIFE AND ACCIDENT
16  INSURANCE COMPANY; and DOES 1
17  through 10, inclusive,

18          Defendants,

19

20

21  Plaintiff alleges as follows:

22                      **GENERAL ALLEGATIONS**

23                         <u>Introduction</u>

24      1.      At the time of her disability, SYLVIA DICKERSON ("Plaintiff") was a

25  Cafeteria Manager for the Roman Catholic Archdiocese of Los Angeles

26      2.      Sadly, by February 24, 2011, her health had declined to a point where

27  she could no longer perform the material and substantial duties of this occupation.

28      3.      MS. DICKERSON timely applied for Short Term Disability benefits and

- 1 -


COMPLAINT

1  was her claim was approved by HARTFORD.

2      4.     Following the exhaustion of her Short Term Disability benefits, MS.

3  DICKERSON timely applied for her Long Term Disability Benefits.

4      5.     On or about June 13, 2013, HARTFORD conditionally approved MS.

5  DICKERSON's Long Term Disability benefits

6      6.     However, just a few weeks later, on or about July 18, 2013, HARTFORD

7  ultimately denied her claim for Long Term Disability benefits.

8                 **Factual Allegations**

9      7.     Plaintiff is, and at all relevant times was, a resident and citizen of the

10  State of California.

11      8.     Plaintiff alleges upon information and belief that Defendant, HARTFORD,

12  has been registered as a corporation with the state of California, has extensive contacts

13  within the state, employs California residents, conducts ongoing business within the state

14  and therefore, may be found within the state

15      9.     The true names and capacities, whether individual, corporate, associate,

16  or otherwise, of Defendants, DOES 1 through 10, inclusive, are unknown to Plaintiff,

17  who therefore sues said Defendants by such fictitious names. Plaintiff is informed and

18  believes and on such information and belief alleges that each of the Defendants sued

19  herein as a DOE is legally responsible in some manner for the events and happenings

20  referred to herein, and will ask leave of this court to amend this Complaint to insert their

21  true names and capacities in place and instead of the fictitious names when the same

22  become known to Plaintiff.

23      10.    At all relevant times, Defendants, and each of them, were the agents and

24  employees of each of the remaining Defendants, and were at all times acting within the

25  purpose and scope of said agency and employment, and each Defendant has ratified

26  and approved the acts of his agent.

27      11.    Based upon information and belief, Plaintiff alleges that at all relevant

28  times herein Plaintiff was covered under group disability policy number GLT-033112

DarrasLaw



1   that had been issued by Defendant HARTFORD to The Roman Catholic Archdiocese of

2   Los Angeles to insure its Plan, and the eligible participants and beneficiaries of the

3   Plan, including Plaintiff. A copy of the subject policy is attached hereto as Exhibit "A".

4       12.     The Plan provides a monthly benefit equivalent to the lesser of 60% of an

5   Employee's monthly covered Earnings rounded to the nearest dollar or the Maximum

6   Disability Benefit less Other Income Benefits following a 24 month Elimination Period.

7       13.     The Plan defines "Total Disability or Totally Disabled" as: "...during the

8   Elimination Period and for the next 24 months(s), as a result of injury or sickness You

9   are unable to perform with reasonable continuity the essential duties necessary."

10      14.     At all relevant times herein, all premiums due under the Policy have been

11  paid and Plaintiff has performed all his obligations under the Policy.

12      15.     Despite timely complying with every request and providing all requested

13  information to HARTFORD, HARTFORD has unreasonably failed to pay MS.

14  DICKERSON the benefits to which she is entitled as referenced above.

15      16.     On or about March 13, 2011, Plaintiff sought medical treatment from Dr.

16  Charles Adams, MD regarding issues of decreased appetite and reports of stomach

17  burning. Dr. Adams diagnosed Plaintiff with chronic abdominal pain and complex

18  regional pain syndrome type 2.

19      17.     On or about March 21, 2011, Plaintiff followed up with Dr. Adams with

20  reports of nausea and vomiting persisting for over a month along with abdomen pain

21  and burning. Plaintiff was sent home from work the day prior due to these symptoms.

22  Dr. Adam's Gastrointestinal review was positive for nausea, vomiting, and abdominal

23  pain.

24      18.     On or about April 13, 2011, Dr. Adam responded to an Attending

25  Physician Statement with:

26          • Primary: Intractable N+V (787.01)

27          • Secondary: Reflex Sympathetic Dystrophy (337.20)

28          • Subjective Symptoms: nausea, vomiting, abdominal pain, body pain

1        • Physical Exam Findings: Abdominal pain, generalized

2       19.    On or about May 9, 2011, Plaintiff followed up with Dr. Adams regarding

3   her issues with nausea and vomiting with complaints of minimal relief from her

4   medications. Plaintiff was found positive for malaise, fatigue, neck pain, myalgia, along

5   with back and join pain.

6       20.    On or about June 13, 2011, Plaintiff met with Dr. Adams for relief from the

7   continued pain she was experiencing. Dr. Adams found the Plaintiff positive for nausea,

8   vomiting, abdominal pain, joint pain, and tingling in her extremities. Additionally, Dr.

9   Adams diagnosed the Plaintiff with Complex Regional Pain Syndrome Type 2.

10       21.    On or about July 20, 2011, Dr. Adams opined that Plaintiff has a

11   "permanent" physical or mental incapacity that prevents or substantially reduces

12   Plaintiff's ability to work full time at their customary job. Additionally, Dr. Adams opined

13   that Plaintiff's complex regional pain syndrome was "worsening".

14       22.    On or about August 25, 2011, Dr. Adams responded to an Attending

15   Physician Statement with:

16       • Primary: Complex regional pain syndrome

17       • Secondary: Abdominal pain

18       • Subjective Symptoms: Abdominal pain, nausea and  vomiting, leg and arm

19         pain

20       • Physical Exam Findings: Abdominal pain on palpation, leg and foot

21         tenderness

22       • Functionality: Pt is unable to use her hands and arms due to pain and

23         unable to move for more than 1 hour a day

24       • Work w/o restrictions? – NO

25       • RTW w/ restrictions? – NO

26       23.    On or about September 14, 2011 Plaintiff visited with Dr. Barr.  Notes

27   from that office visit reveal Dr. Barr's additional diagnosis of Hypothyroidism and

28   Hypertension along with reaffirming his previous diagnosis of Reflex Sympathetic

DarrasLaw

1    Dystrophy, anxiety disorder, and Crohn's disease

2        24.      On or about September 30, 2011 Dr. Adam responded to an Attending

3    Physician Statement with:

4          • Primary: Chronic Regional Pain Syndrome

5          • Secondary: Crohn's Disease

6          • Subjective Symptoms: arm and leg pain, fatigue, abdominal pain,

7            diarrhea

8          • Physical Exam Findings: see report

9          • Functionality: Standing < 2 hrs./8 hrs day . Push/pulling of hands/feet  <2

10           hrs/8 hr day

11         • Work w/o restrictions? -- NO

12       25.      On or about October 12, 2011, Plaintiff sought medical treatment from Dr.

13   Steven Barr, MD for her small bowel Crohn's disease. Plaintiff complains of loose stools

14   and generalized abdominal pain along with a history of chronic pain disorder, nausea,

15   and vomiting.

16       26.      On or about October 20, 2011, Plaintiff followed up with Dr. Barr. Dr. Barr

17   diagnosed Plaintiff with Reflex Sympathetic Dystrophy, anxiety disorder, and Crohn's

18   disease.

19       27.      On or about January 4, 2012, Plaintiff followed up with Dr. Adams with

20   complaints of muscle weakness and reports of falls. Dr. Adam's reaffirmed his previous

21   assessments of Reflex Sympathetic Dystrophy, Crohn's Disease, Hypothyroidism,

22   Hypertension, and Cataract. Additionally, Dr. Adams also diagnosed Plaintiff with

23   muscle weakness.

24       28.      On or about March 19, 2012 Plaintiff followed up with Dr. Koji Kubo, MD

25   for her regional pain syndrome/reflex sympathetic dystrophy, Crohn's disease,

26   hypothyroidism, and Vitamin B12 deficiency. Dr. Kubo noted Plaintiff was experiencing

27   upper, middle, and lower tenderness on palpation and reaffirmed Plaintiff's diagnosis of

28   regional pain syndrome/reflex sympathetic dystrophy, Crohn's disease, and depression.

29.     On or about March 19, 2012, Dr. Koji Kubo, MD penned a letter in support of Plaintiff's disability, stating:

- "This is to certify that the above patient has medical conditions for which she needs assistance for daily activities and household work. Her daughter currently provides assistance for the patient at home."

30.     On or about April 4, 2012 Plaintiff followed up with Dr. Kubo with complaints of diarrhea every day for the past 4 years along with rectal bleeding every week and a half.

31.     On or about April 4, 2012, Plaintiff visited with Dr. Aaron McMurtay, MD for medical treatment. Plaintiff reported experiencing two falls since August due to progressive weakness in her legs, arms, and hands. Further, Plaintiff is noted as reporting pain over her entire body.

32.     On or about May 7, 2012, Plaintiff followed up with Dr. Koji Kubo, MD for treatment of her reflex sympathetic dystrophy, Crohn's disease, and chronic diffuse body ache. Plaintiff was noted to be experience chronic diarrhea as a result of her Crohn's disease and chronic diffuse body ache. Dr. Kubo diagnosed Plaintiff with Dyspnea and Edema.

33.     On or about June 7, 2012, Dr. Koji Kubo, MD stated in a Attending Physician Statement:

- Primary: Reflex Sympathetic Dystrophy (337.20)
- Secondary: Depression (311)
- Subjective Symptoms: Generalized body ache, especially back
- Physical Exam Findings: Diffused tenderness on the back, limited ROM
- Medication: Lyrica 300mg TFD, Soma 380 BID, Norco 100mg TID...continue mostly the same medications for the above problems
- Work w/o restrictions? – NO
- RTW w/ restrictions? – YES 7/1/12
- How long are these accommodations to be in place? At least 6 mths

34.     On or about August 17, 2012, Plaintiff met with Dr. Koji Kubo, MD for treatment of her reflex sympathetic dystrophy, Crohn's disease, and depression. Dr. Kubo's office visit notes reveal that Plaintiff is experiencing fatigue along with pain and stiffness of muscles or joints.

35.     On or about September 7, 2012, Plaintiff followed up with Dr. Koji Kubo, MD with complaints of complex regional pain syndrome/ her reflex sympathetic dystrophy, Crohn's disease, and depression. Dr. Kubo's notes reflect a continued finding of pain and stiffness in the muscle and joints of the Plaintiff.

36.     On or about November 14, 2012, Plaintiff saw Dr. Koji Kubo, MD for treatment of Edema in her legs, complex regional pan syndrome/reflex sympathetic dystrophy, and Crohn's disease. Dr. Kubo found the Plaintiff to be experiencing fatigue with pain and stiffness in her muscles and joints.

37.     On or about December 27, 2012, Dr. Koji Kubo responded to an Attending Physician Statement, stating:

- Primary: Reflex Sympathetic Dystrophy (337.20)
- Secondary: Depression (311)
- Subjective Symptoms: Generalized body pain, back pain, leg pain
- Physical Exam Findings: Tenderness on multiple points all over the body
- Work w/o restrictions? – NO
- RTW w/ restrictions? – NO

38.     On or about January 29, 2013, Plaintiff sought treatment from Dr. Mankwan Wong, MD. Dr. Wong found the Plaintiff experienced "persistent pain in all 4 extremities" due to her reflex sympathetic dystrophy.

39.     On or about February 21, 2013, Plaintiff was diagnosed with chronic pain disorder by Dr. Trish Stephens, MD.

40.     On or about March 13, 2013, Plaintiff returned to Dr. Mankwan Wong, MD for treatment. Dr. Wong's notes reflect a finding of a 1 cm enlarged lymph node on the right submandibular area of Plaintiff's right neck. Dr. Wong's assessment of

1    Plaintiff's condition includes diarrhea, reflex sympathetic dystrophy, and depression.

2        41.    On or about March 21, 2013, Plaintiff began treatment for her decreased

3    appetite and nausea with Dr. Marta Sarransingh, MD. Dr. Sarransingh found the Plaintiff

4    to be positive for "extremity weakness".

5        42.    On or about April 12, 2013, Plaintiff followed up with Dr. Marta

6    Sarransingh, MD with complaints of generalized pain. Dr. Sarransingh notes reveal a

7    finding of fatigue, pain, along with weight gain. Dr. Sarransingh's assessment of Plaintiff

8    includes hypothyroidism, hyperlipidemia, hypertension, and Crohn's disease.

9        43.    On or about April 18, 2013, Plaintiff returned to Dr. Mayur Trivedi, MD for

10   treatment. Plaintiff states she is having multiple bowel movements and that food "just

11   goes right through me."

12       44.    On or about May 17, 2013, Plaintiff saw Dr. Marta Sarransingh, MD for

13   treatment of her ongoing nausea. Dr. Sarransingh diagnosed Plaintiff with

14   Hypothyroidism, Hyperlipidemia, Hypertension, Crohn's Disease, Complex regional pain

15   syndrome of right lower extremities, Anxiety, Nausea, and Vomiting.

16       45.    On or about June 14, 2013 Plaintiff followed up with Dr. Marta

17   Sarransingh, MD with complaints of constant N/V and generalized body aches. Dr.

18   Sarransingh found Plaintiff positive for abdominal pain, nausea, vomiting, numbness in

19   the extremities, and pain in both the back and joints.

20       46.    On or about June 21, 2013, Plaintiff sought treatment from Dr. Syd

21   Bakshandeh, MD. Dr. Bakshandeh's notes from the office visit reflect a finding of

22   Hypothyroidism, Hyperlipidemia, Hypertension, Crohn's Disease, Complex regional pain

23   syndrome of right lower extr, HLA B27, and an impaired gait.

24       47.    On or about September 19, 2013, Plaintiff followed up with Dr. Syd

25   Bakshandeh, MD. Dr. Bakshandeh reaffirmed the previous findings of Hypothyroidism,

26   Hyperlipidemia, Hypertension, Crohn's Disease, Complex regional pain syndrome of

27   right lower extr, HLA B27, Gastroparesis, and an impaired gait

28       48.    On or about November 5, 2013, Plaintiff sought treatment from Dr. Syd

DarrasLaw

1    Bakshandeh, MD with complaints of not being able to eat any solids, but only liquids.

2    Plaintiff reports "excruciating epigastric pain" as a result of consuming solid foods.

3        49.    On or about November 6, 2013, Plaintiff met with Dr. Michael Lipman,

4    MD. Notes from this office visit reflects a finding of  Hypothyroidism, Hyperlipidemia,

5    Hypertension, Crohn's Disease, Complex regional pain syndrome of right lower extr,

6    HLA B27, Gastroparesis, and an impaired gait.

7        50.    On or about February 10, 2014, Plaintiff followed up with Dr. Marta

8    Sarransingh, MD for treatment. Dr. Sarransingh's notes state a finding of complex

9    regional pain syndrome, HLA B27, Crohn's disease, hyperlipidemia, hypertension,

10    Gatsroesophageal reflux, anxiety, depression, and Gastroparesis.

11        51.    On or about February 28, 2014, Plaintiff followed up with Dr. Marta

12    Sarransingh, MD for treatment. Dr. Sarransingh notes reaffirm the following findings of

13    Dr. Sarransingh's notes state a finding of complex regional pain syndrome, HLA B27,

14    Crohn's disease, hyperlipidemia, hypertension, Gatsroesophageal reflux, anxiety,

15    depression, and Gastroparesis.

16        52.    On or about March 6, 2014, Plaintiff returned to Dr. Marta Sarransingh,

17    MD for a follow up to her treatment. Dr. Sarransingh assessment of the Plaintiff opines a

18    diagnosis of Gastroparesis along with reaffirming of complex regional pain syndrome,

19    HLA B27, Crohn's disease, hyperlipidemia, hypertension, Gatsroesophageal reflux,

20    anxiety, and depression.

21        53.    On or about June 20, 2014 Plaintiff followed up with Dr. Marta

22    Sarransingh, MD with reports of chills, fatigue, fever, malaise, night sweats, weight

23    fluctuations, ear drainage, hearing loss, nasal drainage, pain in/around ear, sinus

24    pressure and sore throat. Additionally, Dr. Sarransingh also found Plaintiff to be

25    experiencing a chronic cough, dyspnea, abdominal pain, blood in her stool, change in

26    stool pattern, constipation, decreased appetite, diarrhea, heartburn, nausea and

27    vomiting.

28        54.    On or about December 16, 2014, Plaintiff was approved for Supplemental

- 9 -

1   Social Income benefits.

2      55.   On or about January 15, 2015, Dr. Mankwan Wong, MD penned a letter

3   of support of Plaintiff's disability:

4      •   "I am writing this letter to support the need for a live-in-aide in your

5          residence. You are suffering from depression and anxiety. A live-in-aide

6          will help you manage your young children and housework to reduce level

7          of psychological stress. You have multiple areas of pain and have been

8          diagnosed with reflex sympathetic dystrophy. A live-in-aide will reduce the

9          physical stress on your body and therefore reduce the pain level

10         associated with reflex sympathetic dystrophy."

11     56.   Even though Plaintiff has been, and remains, disabled under the terms of

12  the subject Policy, to date, HARTFORD has unreasonably failed and refused to pay

13  Plaintiff the benefits to which she is entitled.

14

15     PLAINTIFF, SYLVIA DICKERSON, FOR A FIRST CAUSE OF ACTION

16  AGAINST DEFENDANTS, HARTFORD LIFE AND ACCIDENT INSURANCE

17  COMPANY; and DOES 1 through 10, inclusive, FOR BREACH OF THE DUTY OF

18  GOOD FAITH AND FAIR DEALING, ALLEGES:

19     57.   Plaintiff refers to each and every paragraph of the General Allegations

20  and incorporates those paragraphs as though set forth in full in this cause of action.

21     58.   Defendants, and each of them, have breached their duty of good faith

22  and fair dealing owed to Plaintiff in the following respects:

23         a.   Unreasonably failing to make payments to Plaintiff at a time when

24         Defendants knew that Plaintiff was entitled to the payments under the terms

25         of the Policy.

26         b.   Unreasonably delaying payments to Plaintiff knowing Plaintiff's

27         claim for benefits under the Policy to be valid.

28         c.   Unreasonably withholding payments from Plaintiff knowing

1   Plaintiff's claim for benefits under the Policy to be valid.

2       d.      Failing to reasonably and promptly investigate and process

3   Plaintiff's claim for benefits.

4       e.      Not attempting in good faith to effectuate a prompt, fair and

5   equitable settlement of Plaintiff's claim for benefits in which liability has

6   become reasonably clear.

7       f.      Plaintiff is informed and believes and thereon alleges that

8   Defendant has breached its duty of good faith and fair dealing owed to

9   Plaintiff by other acts or omissions of which Plaintiff is presently unaware and

10  which will be shown according to proof at the time of trial.

11      59.    As a proximate result of the aforementioned unreasonable conduct of

12  Defendants, Plaintiff has suffered, and will continue to suffer in the future, damages

13  under the Policy, plus interest, and other economic and consequential damages, for a

14  total amount to be shown at the time of trial.

15      60.    As a further proximate result of the aforementioned unreasonable

16  conduct of Defendants, Plaintiff has suffered anxiety, worry, mental and emotional

17  distress, all to Plaintiff's general damage in a sum to be determined at the time of trial.

18      61.    As a further proximate result of the unreasonable conduct of Defendants,

19  Plaintiff was compelled to retain legal counsel to obtain the benefits due under the

20  Policy. Therefore, Defendants are liable to Plaintiff for those attorneys' fees, witness

21  fees and costs of litigation reasonably necessary and incurred by Plaintiff in order to

22  obtain the Policy benefits in a sum to be determined at the time of trial.

23      62.    Defendants' conduct described herein was intended by Defendants to

24  cause injury to Plaintiff or was despicable conduct carried on by the Defendants with a

25  willful and conscious disregard of the rights of Plaintiff, or subjected Plaintiff to cruel and

26  unjust hardship in conscious disregard of Plaintiff's rights, or was an intentional

27  misrepresentation, deceit, or concealment of a material fact known to the Defendants

28  with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury,

1   such as to constitute malice, oppression or fraud under California Civil Code §3294,

2   thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set

3   an example of Defendants.

4       63.    Defendants' conduct was highly reprehensible because (1) it caused

5   Plaintiff not only substantial economic loss, but also personal physical injury and

6   physical sickness; (2) it demonstrated Defendants' indifference and reckless disregard

7   as to the health and safety of Plaintiff; (3) it was repeated and continuous, rather than

8   just an isolated incident; (4) it caused harm to Plaintiff not by accident, but rather by

9   Defendants' intentional malice, trickery, and deceit; and (5) Plaintiff was financially

10  vulnerable to Defendants' conduct.

11      64.    Defendants' conduct described herein was undertaken by the corporate

12  Defendant's deputies or managing agents, identified herein as DOES 1 through 10, who

13  were responsible for claims supervision and operations, underwriting, communications

14  and/or decisions. The aforedescribed conduct of said managing agents and individuals

15  was therefore undertaken on behalf of the corporate Defendants. Said corporate

16  Defendants further had advance knowledge of the actions and conduct of said

17  individuals whose actions and conduct were ratified, authorized, and approved by

18  managing agents whose precise identities are unknown to Plaintiff at this time are

19  therefore identified and designated herein as DOES 1 through 10, inclusive.

20

21      PLAINTIFF, SYLVIA DICKERSON, FOR A SECOND CAUSE OF ACTION

22  AGAINST DEFENDANTS, HARTFORD LIFE AND ACCIDENT INSURANCE

23  COMPANY; and DOES 1 through 10, inclusive, FOR BREACH OF CONTRACT,

24  ALLEGES:

25      65.    Plaintiff refers to each and every paragraph of the General Allegations

26  and incorporates those paragraphs as though set forth in full in this cause of action.

27      66.    Defendants, and each of them, owed duties and obligations to Plaintiff

28  under the Policy.

67.     Defendants, and each of them, breached the terms and provisions of the insurance Policy by failing to pay benefits under the Policy as set forth in the second paragraph of the First Cause of Action, incorporated herein by reference.

68.     As a direct and proximate result of Defendants' conduct and breach of their contractual obligations, Plaintiff has suffered damages under the Policy in an amount to be determined according to proof at the time of trial.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

AS TO THE FIRST CAUSE OF ACTION AGAINST DEFENDANTS, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY; and DOES 1 through 10, inclusive, FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING:

1.     Damages for failure to provide benefits under the Policy, plus interest, including prejudgment interest pursuant to Section 10111.2 of the California Insurance Code, and other economic and consequential damages, in a sum to be determined at the time of trial;

2.     General damages for mental and emotional distress in a sum to be determined at the time of trial;

3.     For attorneys' fees, witness fees and costs of litigation incurred by Plaintiff to obtain the Policy's benefits in an amount to be determined at the time of trial;

4.     Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants;

5.     For costs of suit incurred herein; and,

6.     For such other and further relief as the Court deems just and proper.

AS TO THE SECOND CAUSE OF ACTION AGAINST DEFENDANTS, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY; and DOES 1 through 10, inclusive, FOR BREACH OF CONTRACT:

1.     Damages under the Policy in an amount to be determined according to proof at the time of trial;

2.      For costs of suit incurred herein; and,

3.      For such other and further relief as the Court deems just and proper.

Dated:  June 8, 2015

DarrasLaw

FRANK N. DARRAS
LISSA A. MARTINEZ
SUSAN B. GRABARSKY
PHILLIP S. BATHER
Attorneys for Plaintiff
SYLVIA DICKERSON

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: June 8, 2015

DarrasLaw

FRANK N. DARRAS
LISSA A. MARTINEZ
SUSAN B. GRABARSKY
PHILLIP S. BATHER
Attorney for Plaintiff
SYLVIA DICKERSON

# GROUP
# BENEFIT
# PLAN



## THE ROMAN CATHOLIC
## ARCHDIOCESE OF
## LOS ANGELES

Long Term Disability                     Option 2

EXHIBIT A

(15-20)

### HARTFORD LIFE AND ACCIDENT INSURANCE

### COMPANY DISABILITY INCOME PROTECTION

### COVERAGE OUTLINE OF COVERAGE

<u>Read Your Certificate Carefully.</u> This outline of coverage provides a very brief description of some important features of your certificate. The certificate itself must be consulted for important details of the coverage provided. Please see the Table of Contents in the front of your Certificate for the location of the sections and provisions referred to in this outline.

1) <u>Disability Income Protection Coverage.</u> This category of coverage is designed to provide, to persons insured, benefits for disabilities resulting from a covered accident or sickness, subject to any limitations set forth in the policy. Benefits are not provided for basic hospital, basic medical-surgical, or major-medical expenses.

2) <u>Benefits.</u> The benefits provided by your coverage are indicated in the Schedule of Insurance in your Certificate. Benefit provisions are described in the Benefits section of your Certificate.

3) <u>Exceptions, Reductions, and Limitations.</u> Exceptions, reductions and limitations to your coverage are described in the Schedule of Insurance and in the Benefits section of your Certificate. In addition, exclusions and limitations, including any limitations for pre-existing conditions, are described in the Exclusions section of your Certificate.

4) <u>Continuation of Coverage.</u> Please see the provisions relating to eligibility for coverage in the Schedule of Insurance, and to continuation and termination of coverage in the Termination provision of the Benefits section of your Certificate.

5) <u>Premiums/Contributions.</u> The premium or contribution required for your coverage is shown in the Schedule of

EXHIBIT A

Insurance in your Certificate. Your premiums or
contributions may increase or decrease as indicated in the
Schedule of Insurance in your Certificate.

EXHIBIT A

## TABLE OF CONTENTS

**Group Long Term Disability Benefits**

| | PAGE |
|---|---|
| CERTIFICATE OF INSURANCE | 3 |
| SCHEDULE OF INSURANCE | 5 |
|   Must You contribute toward the cost of coverage? | 5 |
|   Who is eligible for coverage? | 5 |
|   When will You become eligible? (Eligibility Waiting Period) | 6 |
| ELIGIBILITY AND ENROLLMENT | 8 |
|   When does Your coverage start? | 9 |
|   When will coverage become effective if a disabling condition causes you to be absent from work on the date it is to start? | 10 |
| CAN YOU CHANGE BENEFIT OPTIONS? | 10 |
| WHEN WILL A REQUESTED CHANGE IN BENEFIT OPTIONS TAKE EFFECT? | 10 |
| BENEFITS | 11 |
|   When do benefits become payable? | 11 |
|   When will benefit payments terminate? | 12 |
|   What happens if you return to work but become disabled again? | 12 |
| CALCULATION OF MONTHLY BENEFIT | 13 |
|   Survivor Income Benefit | 16 |
| PRE-EXISTING CONDITIONS LIMITATIONS | 17 |
|   Are there any limitations on coverage? | 17 |
| EXCLUSIONS | 18 |
|   What disabilities are not covered? | 18 |
| TERMINATION | 19 |
|   When does your coverage terminate? | 19 |
|   Does Your coverage continue if Your employment terminates because You are disabled? | 19 |
| CONVERSION PRIVILEGE | 21 |
| GENERAL PROVISIONS | 22 |
| DEFINITIONS | 26 |

PS-M-90

i

EXHIBIT A

**INSURER INFORMATION NOTICE**

· NOTICE REQUIREMENT

IF YOU HAVE A COMPLAINT, AND CONTACTS BETWEEN YOU
AND THE INSURER OR AN AGENT OR OTHER
REPRESENTATIVE OF THE INSURER HAVE FAILED TO
PRODUCE A SATISFACTORY SOLUTION TO THE PROBLEM,
THEN YOU MAY CONTACT:

STATE OF CALIFORNIA INSURANCE DEPARTMENT
CONSUMER COMMUNICATIONS BUREAU
300 SOUTH STREET, SOUTH TOWER
LOS ANGELES, CA  90013

1-800-927-HELP

THE HARTFORD'S ADDRESS AND TOLL-FREE NUMBER IS:

THE HARTFORD GROUP BENEFIT'S DIVISION
POLICYHOLDER SERVICES, P.O. BOX 2999
HARTFORD, CT 06104-2999
TELEPHONE: 1-800-572-9047

2

000019          EXHIBIT A



**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**
Hartford, Connecticut
(Herein called Hartford Life)

**CERTIFICATE OF INSURANCE**
Under
**The Group Insurance Policy**
as of the Effective Date
Issued by
**HARTFORD LIFE**
to
**The Policyholder**

This is to certify that Hartford Life has issued and delivered the Group Insurance Policy to The Policyholder.

The Group Insurance Policy insures the employee of the Policyholder who is named below and who:
- is eligible for the insurance;
- becomes insured; and
- continues to be insured;
according to the terms of the Policy.

**EMPLOYEE NAME:**_____
**SOCIAL SECURITY NUMBER:**_____

The terms of the Group Insurance Policy which affect an employee's insurance are contained in the following pages. This Certificate of Insurance and the following pages will become your Booklet-certificate. The Booklet-certificate is a part of the Group Insurance Policy.

This Booklet-certificate replaces any other which Hartford Life may have issued to the Policyholder to give to you under the Group Insurance Policy specified herein.

3

**000020**   EXHIBIT A

Richard G. Costello, *Secretary*          John C. Walters, *President*

4

EXHIBIT A

## SCHEDULE OF INSURANCE

Final interpretation of all provisions and coverages will be governed by the Group Insurance Policy on file with Hartford Life at its home office.

| | |
|---|---|
| Policyholder: | THE ROMAN CATHOLIC ARCHDIOCESE OF LOS ANGELES |
| Group Insurance Policy: | GLT-033112 |
| Plan Effective Date: | October 1, 1991 |

**THE BENEFITS DESCRIBED HEREIN ARE THOSE IN EFFECT AS OF JULY 1, 2010.**

This plan of Long Term Disability Insurance provides You with long term income protection if You become Disabled from a covered injury, sickness, Mental Illness, Substance Abuse or pregnancy. Where used in this contract, the term Disabled or Disability shall mean Total Disability or Partial Disability as defined in the Definitions Section of the Certificate.

**Must You contribute toward the cost of coverage?**
You must contribute toward the cost of coverage.

**Who is eligible for coverage?**

| | |
|---|---|
| Eligible Class(es): | All Active Full-time Employees who are U.S. citizens or U.S. residents, excluding temporary and seasonal employees as follows: |
| Class 1: | Lay employees who elect STD and LTD within 31 days from being eligible for coverage |

5        033112(GLT)4.72

**000022**  EXHIBIT A

| | |
|---|---|
| Class 2: | Teachers who elect STD and LTD within 31 days from being eligible for coverage |
| Full-time Employees: | 20 hours weekly |
| Maximum Monthly Benefit: | $4,333 |
| Minimum Monthly Benefit: | $50 |
| Benefit Percentage: | 60% |

Annual Enrollment Period:   Determined by your Employer on a yearly basis

**When will You become eligible? (Eligibility Waiting Period)**
If You are working for the Employer prior to the Plan Effective Date and were covered under the Prior Plan, You are eligible for coverage on the first day of the month coincident with or next following Your month of hire.

If You start working for the Employer after the Plan Effective Date, You will be eligible for coverage on the

If You start working for the Employer after the Plan Effective Date, You are eligible for coverage on:

With respect to Class 1:
The first day of the month coincident with or next following the date which you complete 1 month of continuous service.

With respect to Class 2:
If you are hired to start work in August, September 1st if coverage is elected on or prior to September 1st.

The waiting period will be reduced by the period of time you were an Active Full-time Employee with the Employer under the Prior Plan.

6

000023   EXHIBIT A

The Elimination Period is the period of time You must be Disabled before benefits become payable. It is the last to be satisfied of the following:
1. the first 24 consecutive month(s) of any one period of Disability; or
2. with the exception of benefits required by state law, the expiration of any Employer-sponsored short term disability benefits or salary continuation program.

## MAXIMUM DURATION OF BENEFITS TABLE

| Age When Disabled | Benefits Payable |
|---|---|
| Prior to Age 63 | To Normal Retirement Age or 42 months, if greater |
| Age 63 | 36 months |
| Age 64 | 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

Normal Retirement Age means the Social Security Normal Retirement Age as stated in the 1983 revision of the United States Social Security Act. It is determined by Your date of birth as follows:

7

**000024**   EXHIBIT A

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 or before | 65 |
| 1938 | 65 + 2 months |
| 1939 | 65 + 4 months |
| 1940 | 65 + 6 months |
| 1941 | 65 + 8 months |
| 1942 | 65 + 10 months |
| 1943 thru 1954 | 66 |
| 1955 | 66 + 2 months |
| 1956 | 66 + 4 months |
| 1957 | 66 + 6 months |
| 1958 | 66 + 8 months |
| 1959 | 66 + 10 months |
| 1960 or after | 67 |

The above table shows the maximum duration for which benefits may be paid. All other limitations of the plan will apply.

## ELIGIBILITY AND ENROLLMENT

**Who are Eligible Persons?**
All persons in the class or classes shown in the Schedule of Insurance will be considered Eligible Persons.

**When will You become eligible?**
You will become eligible for coverage on either:
1. the Plan Effective Date, if You have completed the Eligibility Waiting Period; or if not
2. the date on which You complete the Eligibility Waiting Period.

See the Schedule of Insurance for the Eligibility Waiting Period.

**How do You enroll?**
To enroll You must:
1. complete and sign a group insurance enrollment form which is satisfactory to us; and
2. deliver it to the Employer.

8

000025   EXHIBIT A

If You do not enroll within 31 days after becoming eligible, You may not enroll until:

1.   an Annual Enrollment Period; or
2.   You have a Change in Family Status.

Any such enrollment must be made during the Annual Enrollment Period or within 31 days of the Change in Family Status.

The dates of the Annual Enrollment Period are shown in the Schedule of Insurance.

**What constitutes a Change in Family Status?**
A Change in Family Status means:

1.   Your marriage, or the birth or adoption of a child, or becoming the legal guardian of a child; or
2.   the death or divorce from Your spouse; or
3.   the death or emancipation of a child.

**What is Evidence of Insurability?**
If You are required to submit Evidence of Insurability, You must:

1.   complete and sign a health and medical history form provided by us;
2.   submit to a medical examination, if requested;
3.   provide any additional information and attending physicians' statements that we may require; and
4.   furnish all such evidence at Your own expense.

We will then determine if You are insurable under the plan.

## WHEN COVERAGE STARTS

**When does Your coverage start?**
If You must contribute toward the plan's cost, Your coverage will start on the date determined below:

1.   the date You become eligible, if You enroll or have enrolled by then;
2.   the date on which You enroll, if You do so within 31 days after the date You are eligible;
3.   the date we approve Your Evidence of Insurability, if You are required to submit Evidence of Insurability; or

9

4.   the first day of the month following the Annual Enrollment Period if You enroll during an Annual Enrollment Period.

## DEFERRED EFFECTIVE DATE

**When will coverage become effective if a disabling condition causes you to be absent from work on the date it is to start?**
If You are absent from work due to:
1.   accidental bodily injury;
2.   sickness;
3.   pregnancy;
4.   Mental Illness; or
5.   Substance Abuse,

on the date Your insurance or increase in coverage would otherwise have become effective, Your effective date will be deferred. Your insurance, or increase in coverage will not become effective until You are Actively at Work for one full day.

## CHANGES IN COVERAGE

**Can You change benefit options?**
You may change to an option providing increased or decreased benefits only:
1.   during an Annual Enrollment Period; or
2.   within 31 days of a Change in Family Status.

You may decrease coverage, or increase coverage to a higher option.  An increase in coverage that is greater than $100,000 will be subject to Your submission of Evidence of Insurability that meets our approval.

**When will a requested change in benefit options take effect?**
If You enroll for a change in benefit option during an Annual Enrollment Period, the change will take effect on the later of:
1.   the first day of the month following the Annual Enrollment Period; or
2.   the date we approve Your Evidence of Insurability if You are required to submit Evidence of Insurability.

If You enroll for a change in benefit option within 31 days following a Change in Family Status, the change will take effect on the later of:

10

1. the date You enroll for the change; or
2. the date we approve Your Evidence of Insurability if You are required to submit Evidence of Insurability.

Any such increase in coverage is subject to the Deferred Effective Date Provision.

**Do coverage amounts change if there is a change in Your class or Your rate of pay?**
Your coverage may increase or decrease on the date there is a change in Your class or Monthly Rate of Basic Earnings. However, no increase in coverage will be effective unless on that date You:
1. are an Active Full-time Employee; and
2. are not absent from work due to being Disabled.

If You were so absent from work, the effective date of such increase will be deferred until You are Actively at Work for one full day.

No change in Your Rate of Basic Earnings will become effective until the date we receive notice of the change.

**What happens if the Employer changes the plan?**
Any increase or decrease in coverage because of a change in the Schedule of Insurance will become effective on the date of the change, subject to the Deferred Effective Date provision.

## BENEFITS

**When do benefits become payable?**
You will be paid a monthly benefit if:
1. You become Disabled while insured under this plan;
2. You are Disabled throughout the Elimination Period;
3. You remain Disabled beyond the Elimination Period;
4. You are, and have been during the Elimination Period, under the Regular Care of a Physician; and
5. You submit proof of loss.

Benefits accrue as of the first day after the Elimination Period and are paid monthly.

11

000028   EXHIBIT A

**Loss of License:** Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation alone, does not mean that You are Disabled. However, information relating to Your loss of license supporting Your claim for benefits may be submitted as part of Your proof of Loss.

**When will benefit payments terminate?**
We will terminate benefit payment on the first to occur of:
1. the date you are no longer Disabled;
2. the date you fail to furnish proof, when requested by us;
3. the date you are no longer under the Regular Care of a Physician, or refuse our request that you submit to an examination by a Physician;
4. the date you die;
5. the date determined from the Maximum Duration of Benefits Table shown in the Schedule of Insurance; or
6. the date no further benefits are payable under any provision in this plan that limits benefit duration.

## MENTAL ILLNESS AND SUBSTANCE ABUSE BENEFITS

**Are benefits limited for Mental Illness or Substance Abuse?**
If you are Disabled because of:
1. Mental Illness that results from any cause;
2. any condition that may result from Mental Illness;
3. alcoholism; or
4. the non-medical use of narcotics, sedatives, stimulants, hallucinogens, or any other such substance,

then, subject to all other Policy provisions, benefits will be payable only for so long as you are confined in a hospital or other place licensed to provide medical care for the disabling condition.

## RECURRENT DISABILITY

**What happens if you return to work but become Disabled again?**
Attempts to return to work as an Active Full-time Employee during the Elimination Period will not interrupt the Elimination Period, provided no more than 30 such return-days are taken.

12

000029   EXHIBIT A

Any day you were Actively at work will not count towards the Elimination Period.

After the Elimination Period, when a return to work as an Active Full-time Employee is followed by a recurrent Disability, and such Disability is:
1.  due to the same cause; or
2.  due to a related cause; and
3.  within 6 month(s) of the return to work,

the Period of Disability prior to your return to work and the recurrent Disability will be considered one Period of Disability, provided the Group Insurance Policy remains in force.

If you return to work as an Active Full-time Employee for 6 month(s) or more, any recurrence of a Disability will be treated as a new Disability.  A new Disability is subject to a new Elimination Period and a new Maximum Duration of Benefits. The Elimination Period and Maximum Duration of Benefits Table are in the Schedule of Insurance.

The term "Period of Disability" as used in this provision means a continuous length of time during which you are Disabled under this plan.

### CALCULATION OF MONTHLY BENEFIT

**How are benefits calculated for Disability?**
If You are Disabled after the Elimination Period, Your Monthly Benefits will be calculated as follows:
1.  multiply Your Pre-disability Earnings by the Benefit Percentage shown in the Schedule of Insurance;
2.  identify the Maximum Benefit shown in the Schedule of Insurance; and
3.  compare the amounts determined in items (1) and (2) above, and from the lesser amount subtract:
    a)   all Other Income Benefits; and
    b)   Current Monthly Earnings.

The result is Your Monthly Benefit. Your Monthly Benefit, however, will not be less than the Minimum Monthly Benefit shown in the Schedule of Insurance.

13

If a reduction to Your Monthly Benefit is applied for Current Monthly Earnings, we will adjust your Pre-disability Earnings for inflation annually by the percentage change in the Consumer Price Index (CPI-W) prior to taking that reduction. The adjustment will be made January 1st each year after you have been Disabled for 12 consecutive months, and if you are receiving benefits at the time the adjustment is made.

For the first 12 months that benefits are payable while working, We will only reduce Your Monthly Benefit by that amount of Your Current Monthly Earnings, which when combined with Your Monthly Benefit amount exceed 100% of Your Indexed Pre-disability Earnings. After 12 months We will subtract 50% of Your Current Monthly Earnings.

**How is the benefit calculated for a period of less than a month?**
If a Monthly Benefit is payable for less than a month, we will pay 1/30 of the Monthly Benefit for each day you were Disabled.

### RETURN TO WORK INCENTIVE

**How are benefits calculated if You return to limited duties during or following the Elimination Period?**
For the first 12 months of a period of Partial Disability, Your Monthly Benefit will be calculated as follows:

1) Multiply Your Indexed Pre-disability Earnings by the Benefit Percentage;
2) Compare the result with the Maximum Benefit; and
3) From the lesser amount, deduct Other Income Benefits.

This is Your Monthly Benefit.

Your Monthly Benefit will be reduced by the amount of Your Current Monthly Earnings, which when combined with Your Monthly Benefit amount exceed 100% of Your Indexed Pre-disability Earnings.

**How are benefits calculated after the 12th Monthly Benefit has been paid?**
After 12 months of benefit have been paid to You for Partial Disability and for any remaining or additional periods of Partial Disability, Your Monthly Benefit will be calculated as follows:

1) Multiply Your Indexed Pre-disability Earnings by the Benefit

14

Percentage;
2) Compare the result with the Maximum Benefit; and
3) From the lesser amount, deduct Other Income Benefits and 50% of Your Current Monthly Earnings.

The result is Your Monthly Benefit.

Your Monthly Benefit, however, will not be less than the Minimum Monthly Benefit shown in the Schedule of Insurance.

**How is the benefit calculated for a period of less than a month?**
If a Monthly Benefit is payable for less than a month, we will pay 1/30 of the Monthly Benefit for each day you were Disabled.

Benefit Percentages and Maximum Benefits are shown in the Schedule of Insurance.

### VOCATIONAL REHABILITATION/ REHABILITATIVE EMPLOYMENT

**What Vocational Rehabilitative services are available?**
Vocational Rehabilitation means employment or services that prepare You, if Disabled, to resume gainful work. If You are Disabled, our Vocational Rehabilitative Services may help prepare You to resume gainful work.

Our Vocational Rehabilitative Services include, when appropriate, any necessary and feasible:
1. vocational testing;
2. vocational training;
3. work-place modification, to the extent not otherwise provided;
4. prosthesis; or
5. job placement.

Rehabilitative Employment means employment that is part of a program of Vocational Rehabilitation. Any program of Rehabilitative Employment must be approved, in writing, by us.

**Do earnings from Rehabilitative Employment affect the Monthly Benefit?**

---

15

If You are Disabled and are engaged in an approved program of Rehabilitative Employment, For the first 12 months that benefits are payable to You under this provision, the sum of Your Monthly Benefit and Your earnings received from Rehabilitative Employment may not exceed 100 % of Your Indexed Pre-disability Earnings. If it does, the Monthly Benefit will be reduced by the amount of excess. We will deduct any Other Income Benefits from the Monthly Benefit payable to You under this provision.

After 12 months of benefits have been paid under this provision, Your Monthly Benefit will be:

1. the Monthly Benefit amount payable for Total Disability; but
2. reduced by Other Income Benefits and 50% of the income received from each month of such Rehabilitative Employment

### SURVIVOR INCOME BENEFIT

**Will your survivors receive a benefit if you should die while receiving Disability Benefits?**
If you die while receiving benefits under this plan, a Survivor Benefit will be payable to:
1. your surviving Spouse; or
2. your surviving Child(ren), in equal shares, if there is no surviving Spouse; or
3. your estate, if there is no surviving Spouse or Child.

If a minor Child is entitled to benefits, we may, at our option, make benefit payments to the person caring for and supporting the Child until a legal guardian is appointed.

The Benefit is one payment of an amount that is 3 times the lesser of:
1. your Monthly Rate of Basic Earnings multiplied by the Benefit Percentage; or
2. the Maximum Monthly Benefit shown in the Schedule of Insurance.

The following terms apply to this Benefit:
1. "Spouse" means your wife or husband who:
   a) is mentally competent; and
   b) was not legally separated from you at the time of your death.

16

**000033**      EXHIBIT A

Surviving Child(ren) includes children of Your California registered domestic partner.

With respect to California residents only, "Spouse" will include an individual who is in a registered domestic partnership with the employee in accordance with California law. Reference in this form to an employee's marriage or divorce shall include his or her registered domestic partnership or dissolution of his or her registered domestic partnership.

2. "Child" means your son or daughter under age 23 who is dependent on you for financial support.

### PRE-EXISTING CONDITIONS LIMITATIONS

**Are there any limitations on coverage?**
This policy will not provide coverage for any period of Disability beginning within the first 12 months of the effective date of Your coverage under this policy if the period of Disability is caused by or substantially contributed to by a Pre-existing condition or the medical or surgical treatment of a Pre-existing condition.

You have a Pre-existing condition if:

1. You received medical treatment, care or services for a diagnosed condition or took prescribed medication for a diagnosed condition in the 3 months immediately prior to the effective date of coverage under this Policy; or
2. You suffered from a physical or mental condition, whether diagnosed or undiagnosed, which was misrepresented or not disclosed in Your application, and:
   a. for which You received a physician's advise or treatment within 3 months before the date of Your coverage under this policy; or
   b. which caused symptoms within 3 months before the date of issue for which a prudent person would usually seek medical advice or treatment.

17

## EXCLUSIONS

**What Disabilities are not covered?**

The plan does not cover, and no benefit shall be paid for any Disability:

1. unless You are under the Regular Care of a Physician;
2. that is caused or contributed to by war or act of war (declared or not);
3. caused by Your commission of or attempt to commit a felony, or to which a contributing cause was Your being engaged in an illegal occupation;
4. caused or contributed to by an intentionally self-inflicted injury.

If You are receiving or are eligible for benefits for a Disability under a prior disability plan that:

1. was sponsored by the Employer; and
2. was terminated before the Effective Date of this plan,

no benefits will be payable for the Disability under this plan.

18

000035   EXHIBIT A

## TERMINATION

**When does your coverage terminate?**
You will cease to be covered on the earliest to occur of the following dates:
1. the date the Group Insurance Policy terminates;
2. the date the Group Insurance Policy no longer insures your class;
3. the date premium payment is due but not paid by the Employer;
4. the last day of the period for which you make any required premium contribution, if you fail to make any further required contribution;
5. the date you cease to be an Active Full-time Employee in an eligible class including:
   a)  temporary layoff;
   b)  leave of absence; or
   c)  a general work stoppage (including a strike or lockout); or
6. the date your Employer ceases to be a Participant Employer, if applicable.

**Does Your coverage continue if Your employment terminates because You are Disabled?**
If You are Disabled and You cease to be an Active Full-time Employee, Your insurance will be continued:
1. during the Elimination Period while You remain Disabled by the same Disability; and
2. after the Elimination Period for as long as You are entitled to benefits under the Policy.

**Must premiums be paid during a Disability?**
No premium will be due for You:
1. after the Elimination Period; and
2. for as long as benefits are payable.

000036   EXHIBIT A

**Do benefits continue if the plan terminates?**

If You are entitled to benefits while Disabled and the Group Insurance Policy terminates, benefits:

1. will continue as long as You remain Disabled by the same Disability; but
2. will not be provided beyond the date we would have ceased to pay benefits had the insurance remained in force.

Termination for any reason of the Group Insurance Policy will have no effect on our liability under this provision.

**May coverage be continued during a family or medical leave?**

If you are granted a leave of absence according to the Family and Medical Leave Act of 1993, your Employer may continue your insurance for up to 12 weeks, or longer if required by state law, following the date your coverage would have terminated, subject to the following:

1. the leave authorization must be in writing;
2. the required premium for you must be paid;
3. your benefit level, or the amount of earnings upon which your benefit may be based, will be that in effect on the day before said leave commenced; and
4. such continuation will cease immediately if one of the following events should occur:
   a) the leave terminates prior to the agreed upon date;
   b) the termination of the Group Insurance Policy;
   c) non-payment of premium when due by the Policyholder or you;
   d) the Group Insurance Policy no longer insures your class; or
   e) your Employer ceases to be a Participant Employer, if applicable.

**May coverage be continued during a leave of absence?**

If you are granted a military leave of absence, the Employer may continue your insurance for 12 weeks following the month coverage would have terminated subject to the following:

1. the leave authorization is in writing or is documented as a leave for military purposes;
2. the required premium must be paid;
3. your benefit level, or the amount of earnings upon which your benefits may be based, will be that in effect on the day before said leave commenced; and

---

20

EXHIBIT A

4.     such continuation will cease immediately if one of the following
events should occur:
    a)    the leave terminates prior to the agreed upon date;
    b)    the termination of the Group Insurance Policy;
    c)    non-payment of premium when due by the Policyholder or you;
    d)    the Group Insurance Policy no longer insures your class; or
e)     your Employer ceases to be a Participant Employer, if applicable.

## CONVERSION PRIVILEGE

**Under what conditions can your Long Term Disability Coverage be converted to another plan?**
If your insurance terminates because:
1.   your employment ends for reason other than your retirement; or
2.   you are no longer in an eligible class,

and if:
1.   you have been continuously insured for at least 12 consecutive months under this plan or under this plan and the Prior Plan;
2.   you are under the Limiting Age, if any is shown in the Schedule of Insurance;
3.   a Disability is not preventing you from performing duties of Your Occupation;
4.   the insurance for your class, or the plan has not terminated;
5.   you are not eligible for coverage under the plan under another class; and
6.   you are not eligible or covered for similar benefits under another group plan or an individual policy,

then you are eligible to enroll for personal insurance under another group policy called the Group Long Term Disability Conversion Policy.

Prior Plan, as used in this Conversion Privilege provision, means the plan of group long term disability insurance that was provided or sponsored by the Employer and terminated on the day before the Plan Effective Date.

21

000038   EXHIBIT A

**How to convert**

To obtain coverage under the Group Long Term Disability Conversion Policy, the following must be done within 60 days of the termination of group insurance:

1. a written enrollment request must be made to us; and
2. the required premium and enrollment fee for the conversion policy must be paid.

If the preceding conditions are met, we will issue to you a certificate of insurance under the Group Long Term Disability Conversion Policy. Such coverage will:

1. be issued without medical evidence of insurability;
2. be on one of the forms then being issued by us for conversion purposes; and
3. be effective on the day following the date your insurance under this plan terminates.

The coverage available under the conversion policy may differ from this plan. The terms of the Group Long Term Disability Conversion Policy, including:

1. the type and amount of coverage provided; and
2. the premium payable,

will be determined by the kinds of insurance being provided by the Group Long Term Disability Conversion Policy at the time such enrollment request is made.

## GENERAL PROVISIONS

**Time Limits on Certain Defenses:  What happens if facts are misstated?**
After three years from the date of issue of this Policy, no misstatement of the employer, except a fraudulent misstatement made in the application shall be used to void the Policy; and after three years from the effective date of the coverage with respect to which any claim is made no misstatement of any employee eligible for coverage under the Policy, except a fraudulent misstatement, made in an application under the Policy shall be used to deny a claim for loss incurred or disability (as defined in the Policy) commencing after expiration of such three years.

22

**000039**   EXHIBIT A

No claim for loss incurred or disability (as defined in the Policy) commencing after three years from the effective date of the insurance coverage with respect to which the claim is made shall be reduced or denied on the ground that a disease or physical condition, not excluded from coverage by name or specific description effective on the date of loss, had existed prior to the effective date of coverage with respect to which the claim is made.

**Notice of Claim:  When should We be notified of a claim?**
Written notice of claim must be given to the insurer within 20 days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonably possible.  Notice given by or on behalf of the insured or the beneficiary to Us at our offices in Hartford, Connecticut, or to any of our authorized agents, with information sufficient to identify the insured, shall be deemed notice to the insurer.

**Claim Forms:  Are special forms required to file a claim?**
We will, upon receipt of written claim notice, furnish to You such forms as are usually furnished by us for filing proof of loss.  If such forms are not furnished within 15 days after We receive written notice of claim You shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in the policy for filing proof of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

**Proof of Loss:  When must proof of Disability be given?**
Written proof of loss must be furnished to Us at our offices in Hartford, Connecticut in case of a claim for loss for which this policy provides any periodic payment contingent upon continuing loss within 90 days after the termination of the period for which We are liable and in case of claim for any other loss within 90 days after the date of such loss.  Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

23

**Physical Examinations and Autopsy:  What additional proof of Disability are We entitled to?**

At our Own expense, We shall have the right and opportunity to examine the person of any individual whose injury or sickness is the basis of claim when and as often as We may reasonably require during the pendency of a claim hereunder and to make an autopsy in case of death, where it is not forbidden by law.

**Time Payment of Claims:  When are payment checks issued?**

Indemnities payable under the policy for any loss other than loss for which the policy provides periodic payments will be paid as they accrue immediately upon receipt of due written proof of such loss.  Subject to due written proof of loss, all accrued indemnity for loss for which the policy provides periodic payment will be paid on a monthly basis and any balance remaining unpaid upon the termination of the period of liability will be paid immediately upon receipt of due written proof.

**Payment of Claims:  Who gets the benefit payments?**

All payments are payable to You.  Any payments owed at Your death may be paid to Your estate.  If any indemnity of the policy shall be payable to Your estate or to a person or beneficiary who is a minor or otherwise not competent to give a valid release, We may pay such indemnity up to an amount not exceeding $1000.00 to any relative by blood or connection by marriage of such person or beneficiary whom We deem to be equitably entitled thereto.  Any payment We make in good faith pursuant to this provision shall fully discharge Us to the extent of such payment.

**What recourse do You have if Your claim is denied?**

On any claim, You or Your representative may appeal to us for a full and fair review.  You may:

1.  request a review upon written application within 180 days of the claim denial;
2.  request copies of all documents, records, and other information relevant to Your claim; and
3.  submit written comments, documents, records and other information relating to Your claim.

---

24

EXHIBIT A

We will make a decision no more than 45 days after we receive Your appeal unless we determine special circumstances exist that require an extension of time to process the appeal. If Your appeal requires extension, we will make our decision no more than 90 days after we receive Your appeal. The written decision will include specific references to the Policy provisions on which the decision is based.

In addition, if a claim for benefits is wholly or partially denied and all administrative remedies have been exhausted, You are entitled to pursue such claim anew, from the beginning, in a court with jurisdiction and to a trial by jury.

**Legal Action: When can legal action be started?**
No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

**What are our subrogation rights?**
If an Insured Person:
1. suffers a Disability because of the act or omission of a third party;
2. becomes entitled to and is paid benefits under the Group Insurance Policy in compensation for lost wages; and
3. does not initiate legal action for the recovery of such benefits from the third party in a reasonable period of time;

then we will be subrogated to any rights the Insured Person may have against the third party and may, at our option, bring legal action to recover any payments made by us in connection with the Disability.

**How will We Determine Your Eligibility for Benefits?**

We, and not Your Employer or plan administrator, have the responsibility to fairly, thoroughly, objectively and timely investigate, evaluate and determine Your eligibility for benefits for any claim You make on The Policy. We will:

1) obtain, with Your cooperation and authorization if required by law, only such information that is necessary to evaluate Your claim and decide whether to accept or deny Your claim for benefits. We may obtain this information from Your Notice of Claim, submitted proofs of loss, statements, or other materials provided by You or others on Your behalf; or, at Our expense We may obtain necessary

25

EXHIBIT A

information, or have You physically examined when and as often as We may reasonably require while the claim is pending.  In addition, and at Your option and at Your expense, You may provide Us and We will consider any other information, including but not limited to, reports from a Physician or other expert of Your choice.  You should provide Us with all information that You want Us to consider regarding Your claim;

2) consider and interpret The Policy and all information obtained by Us and submitted by You that relates to Your claim for benefits and make Our determination Your eligibility for benefits based on that information and in accordance with the Policy and applicable law;

3) if We approve Your claim, We will review Our decision to approve Your claim for benefits as often as is reasonably necessary to determine Your continued eligibility for benefits;

4) if We deny Your claim, We will explain in writing to You or Your beneficiaries the basis for an adverse determination in accordance with the Policy as described in the provision entitled "What notification will You receive if Your claim is denied?"

In the event We deny Your claim for benefits, in whole or in part, You can appeal the decision to Us.  If You choose to appeal Our decision, the process You must follow is set forth in The Policy provision entitled "What recourse do You have if Your claim is denied?"  If You do not appeal the decision to Us, then the decision will be Hartford's final decision.

## DEFINITIONS

The terms listed will have these meanings.

**Actively at Work**
You will be considered to be actively at work with your Employer on a day which is one of your Employer's scheduled work days if you are performing, in the usual way, all of the regular duties of your job on a Full-time basis on that day. You will be deemed to be actively at work on a day which is not one of your Employer's scheduled work days only if you were actively at work on the preceding scheduled work day.

26

**Active Full-time Employee** means an employee who works for the Employer on a regular basis in the usual course of the Employer's business. The employee must work the number of hours in the Employer's normal work week. This must be at least the number of hours indicated in the Schedule of Insurance.

**Any Occupation,** if used in this Booklet-certificate, means an occupation in which You could reasonably be expected to perform satisfactorily in light of Your age, education, training, experience, station in life, and physical and mental capacity.

**Current Monthly Earnings** the monthly earnings You receive from work You perform for Your Employer or for another employer with whom You became employed after Your Disability commenced.

**Employer** means the Policyholder.

**Essential Duty** means the substantial and material acts that are normally required for the performance of Your Usual Occupation, which cannot reasonably be omitted or modified.

To be at work for the number of hours in Your regularly scheduled workweek is also an Essential Duty.

**Your Occupation or Your Usual Occupation,** if used in this Booklet-certificate, means any employment, business, trade or profession and the substantial and material acts of the occupation You were regularly performing for Your employer when the disability began. Your Occupation is not necessarily limited to the specific job You performed for Your employer.

**Mental Illness** means any psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations of psychological, behavioral or emotional disorders, but excluding demonstrable, structural brain damage.

**Monthly Benefit** means a monthly sum payable to you while you are Disabled, subject to the terms of the Group Insurance Policy.

000044   EXHIBIT A

**Monthly Rate of Basic Earnings** means 1/12 of Your annualized income in effect Your last day as an Active Full-time Employee before becoming disabled.

**Other Income Benefits** mean the amount of any benefit for loss of income, provided to You as a result of the Disability for which You are claiming benefits under this plan. This includes any such benefits that are paid to You or to a third party on Your behalf. This includes the amount of any benefit for loss of income from:

1. the United States Social Security Act, Civil Service Retirement System, the Railroad Retirement Act, the Jones Act, the Canada Pension Plan, the Quebec Pension Plan or similar plan or act that You are eligible to receive because of Your Disability;
2. the Veteran's Administration or any other governmental agency for the same Disability;
3. any governmental law or program that provides disability benefits as a result of Your Job with the Employer;
4. salary continuation or sick pay;
5. the portion of a settlement or judgment, minus associated costs, of a lawsuit that represents or compensates for Your loss of earnings;
6. any temporary disability benefits under a workers' compensation law, occupational disease law, or similar law.

Other Income Benefits also means the amount of any benefit for loss of income, provided to Your family from the United States Social Security Act, The Railroad Retirement Act, the Canada Pension Plan, the Quebec Pension Plan or similar plan or act that Your family is eligible to receive as a result of the Disability for which You are claiming benefits under this plan.

You will not be required to claim any retirement benefits which You may only get on a reduced basis.

Any general increase in benefits required by law that You are entitled to receive under any Federal Law will not reduce the Long Term Disability Benefit payable for a period of Total Disability that began prior to the date of such increase.

If You are paid Other Income Benefits in a lump sum, We will pro-rate the lump sum:

28

**000045**   EXHIBIT A

1.  over the period of time it would have been paid if not paid in a lump sum; or
2.  if such period of time cannot be determined over a period of 24 months.

We may require:
1.  Your signed statement identifying all Other Income Benefits; and
2.  proof that You and Your family have duly applied for all Other Income Benefits We reasonably believe You or Your family are entitled to or eligible to receive as a result of the Disability for which You are claiming benefits under this plan.

You will be required to apply for Social Security disability benefits when the length of Your Disability meets the minimum duration required to apply for such benefits.  You will be required to apply within 45 days from the date of Our request.  If the Social Security Administration denies Your eligibility for benefits, You will be required:

1)  to follow the process established by the Social Security Administration to reconsider the denial; and
2)  if denied again, to request a hearing before an Administrative Law Judge of the Office of Hearing and Appeals if such action can reasonably be expected to result in an award.

If You are eligible for benefits under The Canadian Pension Plan, The Quebec Pension Plan, Railroad Retirement Act, or other similar government plan You will be required to apply for such benefits if such action can reasonably be expected to result in such award.  You will be required to pursue those benefits You are eligible to receive with reasonable diligence.

If Your disability was caused by a work injury, You will be required to apply for Workers' Compensation benefits with Your employer if such action can reasonably be expected to result in such an award.  You will be required to pursue those benefits with reasonable diligence.

If You are eligible for benefits from California State Disability Insurance or disability insurance from another state, You will be required to apply for California State Disability Insurance or disability insurance from another state if such action can reasonably be expected to result in such an award.  You will be required to pursue those benefits with reasonable diligence.

29

000046    EXHIBIT A

We will use any reasonable means to estimate the amount of Other Income Benefits payable under the Social Security Administration's Disability Income Program, the Canadian Pension Plan, The Quebec Pension Plan or any similar plan or act if We reasonably believe You or Your family are entitled or eligible to receive them but You or Your family have not applied; or failed to pursue them with reasonable diligence; or You have failed to provide Us with proof that You or Your family have applied for and reasonably pursued these benefits. We will deduct the estimated amount of this benefit from Your Monthly Benefit payable under this plan even if You or Your family are not receiving these benefits.

We will use any reasonable means to estimate the amount of temporary disability benefits payable to You under a workers compensation law or any other occupational disease law or similar act; or the amount of benefits payable to You under any statutory benefit law, plan or act if We reasonably believe You are entitled or eligible to receive them but You have not applied; or failed to pursue them with reasonable diligence; or failed to provide Us with proof that You have applied for and reasonably pursued these benefits. We will deduct the estimated amount of these benefits from Your Monthly Benefit payable under this plan even if You are not receiving these benefits.

**Physician** means a person who is:
1. a doctor of medicine, osteopathy, psychology or other healing art recognized by us;
2. licensed to practice in the state or jurisdiction where care is being given; and
3. practicing within the scope of that license.

**Pre-disability Earnings** means your Monthly Rate of Basic Earnings in effect on the day before you became Disabled.

**Prior Plan** means the long term disability insurance carried by the Employer on the day before the Plan Effective Date.

**Regular Care of a Physician** means you are attended by a Physician, who is not related to you:
1. with medical training and clinical experience suitable to treat your disabling condition; and

30

2.   whose treatment is:
    a)   consistent with the diagnosis of the disabling condition;
    b)   according to guidelines established by medical, research and
           rehabilitative organizations; and
    c)   administered as often as needed,

to achieve the maximum medical improvement.

**Partial Disability or Partially Disabled** means You are not Totally Disabled, and while actually working in an occupation, as a result of sickness or injury, You are unable to engage with reasonable continuity in that or any other occupation in which You could reasonably be expected to perform satisfactorily in light of Your age, education, training, experience or station in life, and physical and mental capacity.

31

**EXHIBIT A**

**Retirement Plan** means a defined benefit or defined contribution plan that provides benefits for your retirement and which is not funded wholly by your contributions.  It does not include:
1.  a profit sharing plan;
2.  thrift, savings or stock ownership plans;
3.  a non-qualified deferred compensation plan; or
4.  an individual retirement account (IRA), a tax sheltered annuity (TSA), Keogh Plan, 401(k) plan or 403(b) plan.

**Substance Abuse** means the pattern of pathological use of alcohol or other psychoactive drugs and substances characterized by:
1.  impairments in social and/or occupational functioning;
2.  debilitating physical condition;
3.  inability to abstain from or reduce consumption of the substance; or
4.  the need for daily substance use to maintain adequate functioning.

Substance includes alcohol and drugs but excludes tobacco and caffeine.

**Total Disability or Totally Disabled** means as a result of injury or sickness, You are unable to engage with reasonable continuity in Any Occupation in which you could reasonably be expected to perform satisfactorily in light of Your age, education, training, experience, station in life, and physical and mental capacity.

**We, us or our** means the Hartford Life and Accident Insurance Company.

**You, your or Insured Person** means the Insured Person to whom this Booklet-certificate is issued.

32

**000049** EXHIBIT A

The Plan Described in this Booklet

is Insured by the

**Hartford Life and Accident Insurance Company**
Hartford, Connecticut

Member of The Hartford Insurance Group

033112(GLT)4.72                    Printed in U.S.A.  6 -'11

**000050**    EXHIBIT A